IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VINSON GRIFFIN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. 4:24-cv-01377-AGF |
| ) | |
| RICHARD ADAMS, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the pro se petition of Missouri state prisoner Vinson Griffin for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a jury for first-degree murder and armed criminal action. Petitioner was sentenced to two concurrent terms of life imprisonment.

In his federal habeas petition, Petitioner asserts two grounds for relief separated into multiple claims. First, that the trial court committed various errors, including: denial of juror substitution, overruling Petitioner's objections to Detective Amy Funk's testimony, and allowing a text message (Exhibit #14) to be introduced as evidence. Second, Petitioner asserts his trial counsel was ineffective by denying his rights to present a defense and to testify. For the reasons set forth below, habeas relief will be denied.

## BACKGROUND

### Trial

This case arises out of the murder of victim Mr. Jerry Scott ("Victim") who was shot on March 17, 2018. The relevant evidence at trial showed the following. Leading

up to the shooting, Victim was outside of his apartment with friend Mr. Kevin Freeman. The two were hanging out in a car while Victim's girlfriend, Ms. Staniesha Johnson, was parked in front of them. Resp. Ex. K at 323-28. A burgundy Buick pulled up next to Victim and Mr. Freeman. Victim, Mr. Freeman, and the Buick driver exited their vehicles when they saw the Buick smoking from the hood. *Id.* at 331-33. While Victim was walking toward the rear of Ms. Johnson's car, Ms. Johnson heard gunshots and saw the Buick driver shooting. *Id.* at 333-35. Mr. Freeman stated that he saw the shooter standing on the running board of the Buick and shooting over the car. *Id.* at 408.

Mr. Freeman testified that he knew Petitioner as "Little Boo" and he grew up with Petitioner and Victim. Mr. Freeman stated Victim had purchased marijuana from Petitioner, and that the second time he (Mr. Freeman) and Victim got marijuana from Petitioner, it was "bullshit." *Id.* at 387-91, 434. According to Mr. Freeman, because Victim failed to pay Petitioner for the marijuana, Petitioner would drive around in a burgundy Buick looking for Victim. *Id.* at 389-98.

Mr. Freeman was interviewed by the police on four occasions. In his first two interviews, Mr. Freeman did not tell the police he knew the shooter. At his third interview, Mr. Freeman told the police it was "Little Boo." *Id.* at 412-14; 452. At trial, Mr. Freeman identified "Little Boo" as Petitioner and testified that Petitioner was the person who pulled up beside Mr. Freeman and Victim, and who shot Victim on March 17, 2018. *Id.* at 388, 399-408.

Mr. Freeman stated he had Petitioner's phone number but had deleted it. *Id.* at 391-92. The State then moved to introduce Exhibit 14– a text message sent to Mr.

2

Freeman on March 17, 2018, at 11:17 p.m. that read "Act like you know me. You don't know me, bro. You don't know me, bro. Like for real. Now play with me." *Id.* at 419. Mr. Freeman testified that he knew the message was from Petitioner because he remembered the first three digits of the phone number. *Id.* at 416-18. Mr. Freeman thought the message must have been sent as Petitioner was leaving the scene of the crime. *Id.* at 418. Petitioner objected to the admission of Exhibit 14 on the grounds of hearsay, the best evidence rule, and lack of foundation, but the trial court overruled the objection and allowed the Exhibit to be admitted. *Id.*

During the trial, Detective Funk testified that shortly after the murder, she interviewed Victim's family, who indicated that they believed Mr. Freeman knew more information than what he had reported. *Id.* at 520-21. The family also provided Detective Funk with the nickname "Boo or Little Boo" as a possible suspect, in addition to a general geographic location for this suspect around Temple. *Id.* at 521. Detective Funk then testified that she ran variations of the nickname "Little Boo" through databases but came up with many potential suspects that matched the vague descriptions. *Id.* at 522.

However, Detective Funk testified that, on the same day, she also received an anonymous tip that indicated the person responsible for the shooting "was a man by the name of Vinson who lives on the south side, drives a maroon Buick Century, and that he's from the west side, specifically, Temple." *Id.* at 525. When asked what she did with that information, Detective Funk replied that she took that information and "threw it

3

through the databases again." *Id.* This search led Detective Funk to "c[o]me up with [Petitioner]." *Id.* at 526.

Detective Funk used the information provided by Mr. Freeman to corroborate that Petitioner could be the person Mr. Freeman was referencing.[1] *Id.* Detective Funk then explained that she used the anonymous tip and corroboration with Mr. Freeman's information to put Petitioner in a photographic lineup for Mr. Freeman. *Id.* Mr. Freeman identified Petitioner in that photographic lineup as the shooter. *Id.* at 528-30.

At trial, outside the hearing of the jury, Petitioner objected that the anonymous tip constituted hearsay and violated the Conformation Clause because it was "an implication of [Petitioner] in an uncharged crime and . . . a testimonial statement" in violation of the constitution and due process.[2] *Id.* at 524. The prosecution replied that the tip was not being used "for the truth of the matter asserted" but was offered to explain Detective Funk's conduct leading up to the photo lineup presented to Mr. Freeman. *Id.* The trial court overruled the objection and allowed Detective Funk's testimony regarding the anonymous tip to be presented to the jury. *Id.* at 524-25.

Detective Funk then testified that she eventually brought another detective, James Wilcox, into the investigation. *Id.* at 532. When asked why she had brought Detective

---

[1]  At this point of the investigation Mr. Freeman had only told Detective Funk that the shooter was "Little Boo" and had not yet identified Petitioner as the shooter.

[2]  Although it is unclear whether Petitioner had specifically moved to exclude this evidence, the facts leading up to the identification of Petitioner, including this tip, were discussed in a pre-trial hearing on Petitioner's motions in limine before the trial. *Id.* at 14-15.

4

Wilcox into the investigation, Detective Funk replied that it was "[her] understanding that . . . Detective Wilcox knew [Petitioner] from a prior dealing." *Id.* Petitioner objected to this testimony and requested a mistrial, which the trial court overruled; however, the trial court took the objection under submission to consider later. *Id.* at 533-34. Detective Funk made no subsequent reference to Petitioner's prior criminal history.

After Detective Funk's testimony, Juror 988, informed the court that she knew Detective Funk from when the Detective testified in front of a grand jury she had previously served on. *Id.* at 578. Juror 988 did not disclose this information during voir dire, despite the State's attorney having asked if anyone recognized Detective Funk's name. *Id.* at 105-06. Juror 988 indicated that she recognized Detective Funk "as soon as she walked in" to give her testimony. *Id.* at 578. The trial court asked Juror 988 if she could remain fair and impartial, and she confirmed she could. Petitioner moved to have Juror 988 stricken, which the trial court denied. *Id.* at 577-82.

Following Juror 988's disclosure, the trial court denied Petitioner's previous motion for a mistrial. The trial court reasoned that the remainder of Detective Funk's testimony and what was actually said was not "over the line" and did not "implicate the [Petitioner's] prior criminal history." *Id.* at 581.

Petitioner did not testify at trial, and Petitioner's trial counsel stated he had discussed the decision with Petitioner. When questioned, Petitioner confirmed that the decision not to testify was his own. *Id.* at 632-33. The jury returned a verdict on December 19, 2019, and found Petitioner guilty of murder in the first degree and armed criminal action.

5

Following the trial, Petitioner filed a motion for a new trial and argued in favor of that motion at sentencing. *Id.* at 687. Petitioner claimed that the admission of Detective Funk's testimony regarding the anonymous tip violated Petitioner's right to due process and confrontation. *Id.* Petitioner also argued that the admission of Detective Funk's reference to Petitioner's "prior dealing" with Detective Wilcox violated Petitioner's right to due process. *Id.* at 688. Lastly, Petitioner maintained that allowing Juror 988 to continue to serve on the jury created bias, and the juror should have been removed. *Id.* at 688-89. The trial court denied Petitioner's motion for a new trial. *Id.* at 690. Petitioner was sentenced to serve two concurrent life sentences. *Id.* at 693-94.

**Direct Appeal**

On direct appeal, Petitioner, through appointed counsel, argued: (1) the trial court erred in overruling Petitioner's objection to Detective Funk's testimony about the anonymous tip because the admission of the tip violated Petitioner's right to due process, a fair trial, and right to confront witnesses; (2) the trial court abused its discretion in admitting Exhibit 14, the text message, because it violated Petitioner's rights to due process and a fair trial; and (3) the trial court abused its discretion when it denied Petitioner's motion to substitute Juror 988 because she could not be a fair and impartial juror, which violated Petitioner's rights to due process, a fair trial, and right to a fair and impartial jury. Resp. Ex. A. at 16-18.

The Missouri Court of Appeals denied all three of Petitioner's claims. Concerning the first claim, the appellate court held that Detective Funk's testimony about the anonymous tip was not hearsay and did not violate the Confrontation Clause because it

6

"was not offered for the truth of the matter asserted." Resp. Ex. C. at 5. The court explained that when Detective Funk's testimony was "viewed in context, it is clear that the State offered her testimony regarding the anonymous tip not for the truth of the matter asserted, but rather to explain the commencement of the police investigation of [Petitioner] and Freeman's resulting identification of him." *Id.* at 4. The court further noted that the State had presented other substantial evidence to prove Petitioner was the shooter, including testimony from Mr. Freeman and Ms. Johnson. *Id.*

As to the second point, the appellate court rejected Petitioner's argument that the text message in Exhibit 14 was hearsay. The court noted that the text message was not offered to prove the truth of the matter, it was an admission of a party opponent, and sufficient evidence had been offered to authenticate the message. *Id.* at 5-7.

Petitioner's final argument regarding juror bias was also rejected by the appellate court. The court reasoned:

> Juror [988] did not recognize Detective Funk's name and therefore would not have been able to disclose her knowledge of Detective Funk until she recognized her in person. And when Juror [988] did recognize Detective Funk, she alerted the trial court. The trial court questioned Juror [988] on the issue and concluded she would be able to serve as a fair and impartial juror. Griffin suffered no prejudice from Juror [988] serving on the jury since she confirmed she could be fair and impartial.

Resp. Ex. C. at 8.

**State Post Conviction Proceedings**

On May 5, 2020, Petitioner prematurely filed a pro se motion for post-conviction relief. Resp. Ex. G at 2. In his amended motion for post-conviction relief, filed with the assistance of counsel, Petitioner argued that his trial counsel was ineffective for: (1)

7

failing to call a potential alibi witness, Tissa Taylor, to testify at trial; and (2) inducing Petitioner's "unknowing, unintelligent, and involuntary waiver of his right to testify." *Id.* at 16-27. Petitioner also asserted that (3) his appellate counsel was ineffective for failing to assert on appeal that the trial court erred in overruling Petitioner's request for a mistrial after Detective Funk testified that Detective Wilcox had a "prior dealing" with Petitioner. *Id.* at 29-34.

The motion court held an evidentiary hearing where Petitioner, Petitioner's trial counsel, and Petitioner's appellate counsel testified. On January 5, 2023, the motion court denied Petitioner's motion for post-conviction relief. Resp. Ex. H at 11. As to Petitioner's first claim, the motion court noted that Petitioner's trial counsel testified he did not know about Ms. Taylor, and Petitioner had not presented testimony of Ms. Taylor at the evidentiary hearing. Because of this, Petitioner could not prove that his trial counsel knew or should have known about Ms. Taylor, that Ms. Taylor would have testified if called, or that her testimony would have supported Petitioner. *Id.* at 5-6. The motion court also denied Petitioner's second claim that his trial counsel was ineffective for inducing Petitioner's waiver of his right to testify. The motion court held that Petitioner failed to show that his waiver was not voluntary, knowing, or intelligent; and that the trial court had properly questioned Petitioner on this point. *Id.* at 6-8.

As to Petitioner's third claim, the motion court held that Petitioner had not shown that the claimed error would have required reversal if it had been asserted. Instead, the motion court noted that the remark regarding Petitioner's "prior dealing" with the detective was made in passing, Petitioner's objection at trial was sustained, and the issue

8

was not returned to or mentioned before the jury again. *Id.* at 8-11.

On appeal, Petitioner, through appointed counsel, pursued only his third claim, that his appellate counsel was ineffective for failing to assert on appeal the trial court's denial of a mistrial. Resp. Ex. D at 23-25. Petitioner did not pursue any of his other post-conviction claims on appeal.

On December 12, 2023, the Missouri Court of Appeals affirmed the motion court's denial of post-conviction relief. Resp. Ex. F at 2. The court held that even if appellate counsel had raised this issue on appeal, it would not have been meritorious. Specifically, the court held that to justify a mistrial for the admission of uncharged crimes, Petitioner needed to show that clear and definitive evidence was presented at the trial that associated him with the other crimes, which he failed to show. The court reasoned that Detective Funk's comment of "prior dealing" was vague and did not explicitly link Petitioner to a specific past crime. *Id.* at 6-8.

**Federal Habeas Petition**

Petitioner now raises two grounds separated into multiple claims for federal habeas relief. Under Ground 1, Petitioner argues that the trial court erred in: (a) denying his motion to substitute a juror; (b) overruling his objections to Detective Funk's testimony regarding the anonymous tip; and (c) admitting the text message in Exhibit 14 over Petitioner's hearsay objection. Under Ground 2, Petitioner asserts that his trial counsel was ineffective because: (a) he denied Petitioner the right to present a defense; and (b) he denied Petitioner his right to testify.

Respondent argues that all three claims under Ground 1 were litigated on direct

appeal and that the state court's rulings are entitled to deference. Respondent further argues that the ineffective assistance of trial counsel claims under Ground 2 are procedurally defaulted and meritless. ECF No. 8 at 8.

## DISCUSSION

Federal habeas relief is available to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a claim has been adjudicated on the merits in state court, the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that habeas relief cannot be granted unless the state court's adjudication:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"AEDPA requires federal courts presume that state court factual findings are correct, and it places the burden on [the petitioner] to rebut that presumption by clear and convincing evidence." *Nicklasson v. Roper*, 491 F.3d 830, 834 (8th Cir. 2007) (citing 28 U.S.C. § 2254(e)(1)).

### A.    Ground 1

While petitioner did raise all three arguments under Ground 1 in his direct appeal of his conviction and sentence to the Missouri Court of Appeals, all claims are without

merit and were properly rejected by the appellate and trial court.

### Ground 1a: The trial court erred in denying Petitioner's motion to substitute a juror

The appellate court and trial court were reasonable in their denial of Petitioner's motion to substitute a juror. Specifically, the appellate court correctly held that substitution of a juror is a matter that is entrusted to the trial court's discretion. *United States v. Green*, 428 F.3d 1131, 1135 (8th Cir. 2005) (noting that the trial court retains "broad discretion" in determining whether to dismiss a juror and no abuse of discretion will be found "if the record shows a legitimate reason for the court's decision to retain the juror") (citations omitted); *Moran v. Clarke*, 443 F.3d 646, 650-51 (8th Cir. 2006) (holding that there was no abuse of discretion when jurors were not stricken who had "acknowledged difficulty being impartial" but "consistently stated that they could be impartial").

The decisions of the appellate and trial court were also based on a reasonable determination of the facts concerning Petitioner's trial. *Pruett v. Norris*, 153 F.3d 579, 588 (8th Cir. 1998) (finding no violation when "each juror expressly affirmed that he or she could be impartial and render a verdict based solely on the evidence presented at trial, and nothing in the record suggests otherwise"); *Williams v. Vandergriff*, No. 4:18 CV 515 (JMB), 2021 WL 3885618, at *9 (E.D. Mo. Aug. 31, 2021) ("Under both Missouri and federal law, the decision to remove a juror . . . lies with the sound discretion of the trial judge.") (citations omitted). Accordingly, their decision is entitled to deference, and Petitioner's argument is denied.

11

**Grounds 1b & 1c: Evidentiary Claims**

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States," and it is not within "the province of a federal habeas court to reexamine state-court determinations on state-law questions," such as the admissibility of evidence at trial. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted); *see also Bucklew v. Luebbers*, 436 F.3d 1010, 1018 (8th Cir. 2006). A federal court can only grant relief if the state court's evidentiary decision "infringe[s] on a specific constitutional protection or [is] so prejudicial as to amount to a denial of due process." *Bucklew*, 436 F.3d at 1018; *Clark v. Groose*, 16 F.3d 960, 963 (8th Cir. 1994). While the Court normally reviews questions of evidence for abuse of discretion, "when an appellant contends that his rights under the Confrontation Clause were violated by the admission of evidence, this is a question of law [the Court] review[s] de novo." *Devereux v. Kempker*, No. 4:20-CV-490 RLW, 2023 WL 4075532, at *6 (E.D. Mo. June 20, 2023).

Petitioner's first evidentiary argument is that the trial court erred in overruling his objections to Detective Funk's testimony regarding the anonymous tip. While Petitioner does not expound on this argument in his habeas petition, pro se habeas petitions are entitled to liberal construction, and the Court construes this claim to be the same as Petitioner's argument on direct appeal. *Phillips v. Steele*, No. 4:07CV00521 ERW, 2010 WL 682329, at *16 (E.D. Mo. Feb. 24, 2010) (noting that "a pro se habeas petition must be liberally construed") (citation omitted); *Archuleta v. Hedrick*, 365 F.3d 644, 648 (8th Cir. 2004) ("Pro se habeas petitions should be liberally construed.") (citation omitted).

12

On direct appeal, Petitioner argued that the admission of the anonymous tip violated Petitioner's right to due process, a fair trial, and right to confront the witness because the testimony about the anonymous tip was hearsay and amounted to testimonial statements that linked Petitioner to the crime.  Resp. Ex. A at 19.  The Confrontation Clause prohibits the admission of testimonial statements offered to prove the truth of the matter asserted made by an out-of-court witness, unless the witness was unavailable to testify and subject to confrontation by the opposing party.  *Crawford v. Washington*, 541 U.S. 36, 68 (2004); *Brown v. Jennings*, No. 4:18-CV-2123-RWS, 2020 WL 134372, at *3 (E.D. Mo. Jan. 13, 2020).  Thus, to succeed on his claim, Petitioner needed to show that Detective Funk's testimony concerning the anonymous tip was both testimonial and hearsay.

The testimony about the anonymous tip is considered hearsay if it was offered to prove the truth of the matter asserted.  *See United States v. Spencer*, 592 F.3d 866, 879 (8th Cir. 2010).  In contrast, the statement is not considered hearsay where "the statement is used to explain subsequent police conduct and to supply background and continuity." *Humphrey v. Roper*, No. 4:09-CV-42 JCH, 2010 WL 4286195, at *2 (E.D. Mo. Oct. 26, 2010) (citation omitted); *United States v. Malik*, 345 F.3d 999, 1001-02 (8th Cir. 2003) (stating that evidence is not considered hearsay if it is offered to explain reasons for a police investigation).

Here, the Court agrees with the appellate court's finding that when Detective Funk's testimony is viewed in context, her testimony about the anonymous tip was not hearsay because the testimony was not admitted for its truth that Petitioner was the

13

shooter. Resp. Ex. C at 2-4. At trial, the prosecutor stated that the tip was not being offered for the truth but rather to explain how the investigation proceeded. The trial court permitted it for this purpose, and Petitioner did not request a limiting instruction.

Detective Funk's testimony about the anonymous tip was also directly related to an explanation of why she placed Petitioner in a photo lineup. Detective Funk testified that after receiving the tip, she used the tip along with the information from Mr. Freeman and Victim's family to come up with Petitioner's name and information out of a list of many other potential suspects with the same nickname. She utilized this information to place Petitioner in a photo lineup for Mr. Freeman. Her testimony was not used to prove that Petitioner was the shooter but was offered to explain why the police investigated Petitioner and placed him in the photo lineup. *Compare Pampkin v. Bowersox*, No. 4:16-cv-00561-JCH, 2016 WL 6577189, at *3 (E.D. Mo. Nov. 7, 2016) (holding that a detective's testimony regarding an informant's statements did not violate the Confrontation Clause because the statements were used to explain police conduct), *and Belford v. Roper*, No. 4:03CV613 RWS, 2006 WL 2850543, at *10 (E.D. Mo. Sep. 29, 2006) (finding that a detective's testimony that he learned of two names from a confidential informant was not being used for the truth of the matter asserted and there was no basis for a Confrontation Clause claim), *with United States v. Holmes*, 620 F.3d 836, 842 (8th Cir. 2010) (finding that statements about information received from a

14

confidential informant used to obtain a search warrant "were certainly offered to establish their truth").[3]

Further, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Woods v. Etherton*, 578 U.S. 113, 116-17 (2016) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). The state court's decision that the testimony about the anonymous tip does not qualify as hearsay is not "so lacking in justification" that it is "beyond any possibility for fairminded disagreement." *Id*. at 118 ("A 'fairminded jurist' could conclude that the repetition of the tip did not establish that the uncontested facts it conveyed were submitted for their truth."); *Brown*, 2020 WL 134372, at *3-4 (holding that a state court's determination that testimony about an anonymous caller who gave the accused's name was not hearsay because the state court decision was not so lacking in justification as to warrant habeas review).

Additionally, Petitioner cannot show that if the trial court did err in admitting the testimony, that the error was so prejudicial that it had a "substantial and injurious effect or influence in determining the jury's verdict." *Yang v. Roy*, 743 F.3d 622, 626 (8th Cir. 2014) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). In light of the other evidence presented at trial, even without Detective Funk's testimony regarding the anonymous tip, the jury was provided with ample evidence to establish Petitioner's guilt.

---

[3] While it would have been prudent for the trial court to give a limiting instruction advising the jury not to consider this evidence for the truth of the matter, as noted above, Petitioner did not request such a limiting instruction, and the lack of such instruction does not alter the fact that the testimony did not constitute hearsay.

*See Holmes*, 620 F.3d at 844-845 (holding that even though there was a Confrontation Clause violation, the error was harmless because the other evidence presented established the petitioner's guilt); *Jackson v. Norris*, 573 F.3d 856, 858 (8th Cir. 2009) (finding that testimony challenged on habeas review did not have a "substantial impact on the jury's verdict" when it was "cumulative of other evidence").

As the appellate court noted, "the State presented substantial evidence that [Petitioner] was the shooter." Resp. Ex. C at 4. Mr. Freeman picked Petitioner out of a photo lineup, testified that he knew Petitioner, and identified him as the shooter. Resp. Ex. K at 388, 528-39. Ms. Johnson also provided testimony that confirmed the color of the Buick and that she saw the driver of the Buick shoot Victim. *Id.* at 331-35. Detective Funk's testimony was not centered on the anonymous tip, but also included references to how she obtained the nickname "Little Boo" from Victim's family and the information Mr. Freeman provided her. *Id.* at 520-30. Given the additional evidence that was presented to establish Petitioner's guilt, the admission of the testimony about the anonymous was not so prejudicial as to violate Petitioner's fundamental fairness under due process or have a substantial impact on the jury's verdict.

Consequently, because Detective Funk's testimony about the anonymous tip was not offered for its truth, the state court's determination leaves room for fairminded disagreement, and the state court's decision was not so prejudicial that it influenced the jury's verdict, Petitioner's habeas claim based on the admission of the testimony concerning the anonymous tip must be denied.

Petitioner's second evidentiary argument that the text message constituting Exhibit 14 was hearsay and improperly admitted is also without merit. The appellate court found that the text message was properly authenticated and was not hearsay because it was not offered to prove the truth of the matter asserted and was also an admission of a party opponent. Resp. Ex. C at 5-6. Petitioner has not identified any error in this conclusion of state law, and the Court concludes that the appellate court did not abuse its discretion in so holding. Further, in light of the other evidence of his guilt, Petitioner has not shown that the admission of this single and relatively obscure text message was so prejudicial as to violate his fundamental fairness under due process. Accordingly, this ground for habeas relief is also denied.

B. **Ground 2: Procedural Default**

Under the doctrine of procedural default, a federal habeas court is barred from considering the merits of a claim not fairly presented to the state courts, absent a showing by the petitioner of cause for the default and prejudice resulting therefrom, or that he is actually innocent, such that a miscarriage of justice would result by failing to consider the claim. *E.g., Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011). Both of Petitioner's claims under Ground 2 alleging ineffective assistance of his trial counsel (denying his right to present a defense and denying his right to testify) were procedurally defaulted in state court.

Petitioner did not raise his argument that he was denied his right to present a defense in his post-conviction hearing. As for Petitioner's argument that he was denied his right to testify, Petitioner did allege in his post-conviction hearing that his trial

17

counsel was ineffective for "inducing him to unknowingly, unintelligently, and involuntarily waive his right to testify." Resp. Ex. G at 21. However, Petitioner did not pursue the claim on appeal from denial of that motion.

In Missouri, "a claim [must] be presented 'at each step of the judicial process' in order to avoid default." *Jolly v. Gammon,* 28 F.3d 51, 53 (8th Cir. 1994) (quoting *Benson v. State*, 611 S.W.2d 538, 541 (Mo. Ct. App. 1980)). "Failure to raise a claim on appeal from the denial of a post-conviction motion erects a procedural bar to federal habeas review." *Id.* Petitioner has not shown cause to excuse the default[4] or that a miscarriage of justice will result if the defaulted claims are not considered. Both claims under Ground 2 were thus procedurally defaulted and cannot support a grant of federal habeas relief.

## **CONCLUSION**

The Court concludes that Petitioner is not entitled to federal habeas relief. The Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. § 2254(d)(2). *See Buck v. Davis*, 580 U.S. 110, 115 (2017) (standard for issuing a Certificate of Appealability) (citing *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)).

Accordingly,

---

[4]   Petitioner has not alleged ineffective assistance of post-conviction appellate counsel, and in any event, such an allegation has not been recognized as cause to excuse a procedural default in the habeas context. *See Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012).

**IT IS HEREBY ORDERED** that the petition of Vinson Griffin for a writ of habeas corpus relief is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability shall not be issued.

A separate Judgment shall accompany this Memorandum and Order.

                                                  _____
                                                  AUDREY G. FLEISSIG
                                                  UNITED STATES DISTRICT JUDGE

Dated this 24th day of April, 2025.